**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| F.B., individually, and on behalf of M.B., her minor child, | |
| Plaintiff, | Civ. No. 08-1206 (DRD) |
| v. | **O P I N I O N** |
| EAST ORANGE BOARD OF EDUCATION (Essex County), | |
| Defendant. | |

*Appearances by:*

EDUCATION LAW CENTER
RUTGERS UNIVERSITY SCHOOL OF LAW
123 Washington Street
Newark, NJ  07102
by:  Jennifer N. Rosen Valverde, Esq.

*Attorney for Plaintiff*

SCHWARTZ SIMON EDELSTEIN CELSO & KESSLER, LLP
10 James Street
Florham Park, NJ  07932
by:  Denis G. Murphy, Esq.

*Attorney for Defendant*

**DEBEVOISE, Senior District Judge**

Plaintiff, F.B., individually and on behalf of her minor child, M.B., brought this action

against Defendant, the East Orange Board of Education ("the Board"), to recover attorneys' fees

and related costs under the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400, et seq. ("IDEA").  F.B. avers that she was the prevailing party in administrative proceedings against the Board.  The Board moves to dismiss F.B.'s complaint, arguing that because the administrative proceedings did not result in a decision on the merits, F.B. cannot be considered a prevailing party.  The Board also asserts that the amount of fees requested is unreasonable.  In response, F.B. moves for summary judgment, alleging that no issues of fact exist that would prevent disposition of this matter.

Because the administrative proceeding resulted in a decision as to the validity of the Board's defense, F.B. is a prevailing party under the IDEA and entitled to fees.  Therefore, the Board's motion to dismiss is hereby denied, and F.B.'s motion for summary judgment is granted.

## I.  BACKGROUND

F.B. is the great-grandmother and legal guardian of M.B., a seventeen-year old male who has been classified by the Board as multiply disabled, with emotional disturbance and other health impairments.  This classification makes M.B. eligible for special education and related services.  The Board is a "local educational agency," as defined 20 U.S.C. § 1401(19), and governs the East Orange Public School District in Essex County.

In the fall of 2007, M.B. expressed an interest in leaving the private institution for disabled students at which he was then-enrolled and attending public high school in East Orange. The board held two meetings with M.B. and F.B. on November 7th and 26th of that year in order to assess his interests and determine a proper educational placement.  After the second meeting, the Board agreed to an Individualized Education Plan ("IEP") whereby M.B. would attend Campus High School in East Orange for a 30-day trial period.  F.B. and Tanya Santos, the

2

Board's Director of Special Services, signed a handwritten document memorializing the

agreement, which stated that "an IEP will be developed and mailed to the family to reflect this

placement." (Pl.'s Br. Supp. Mot. Summ. J., Ex. 1.) In addition to the handwritten agreement,

an IEP revision form was completed and signed by F.B. and Margaret Bonito, M.B.'s case

manager. That form changed M.B.'s school placement to Campus High School in East Orange,

effective December 3, 2007.

F.B. and M.B. went to Campus High School on November 28, 2007 for a prearranged

tour of the school. On their arrival, they were informed that M.B. would not be allowed to attend

Campus High School due to his alleged criminal involvement in the community. In a subsequent

letter, counsel for the Board explained that information provided by Sergeant Hall, a police

officer stationed at Campus High School, convinced the Board that it would not be able to assure

M.B.'s safety if he were to attend the school. The letter stated that the Board would not have

agreed to allow M.B. to attend Campus High School if he had fully disclosed the extent of his

criminal activities at the meeting on November 26th, and offered an alternative arrangement of

10 hours a week of home instruction until M.B. could be placed at an appropriate out-of-district

school. (Pl.'s Br. Supp. Mot. Summ. J., Ex. 3.)

Several days later, F.B. received an IEP for home instruction for M.B. in the mail. No

meeting was ever held between F.B. and the IEP team to agree on home instruction as a

placement or to develop a new IEP following the Board's refusal to allow M.B. attend Campus

High School.

Following the receipt of the IEP calling for home instruction, F.B., through her counsel,

the Special Education Clinic at Rutgers University Law School – Newark ("the Clinic"), filed

two petitions, one for emergent relief and one alleging that the Board violated M.B.'s due process
rights by unilaterally changing his school placement.  The petitions sought identical relief: an
order compelling the Board to permit M.B. to attend Campus High School, as per the
handwritten agreement between F.B. and Tanya Santos dated November 26, 2007 and the IEP
revision form, also dated November 26, 2007.

An emergent relief hearing was held on December 14, 2007, before Administrative Law
Judge ("ALJ") Barry E. Moskowitz.  At the hearing, the ALJ determined that Campus High
School was M.B.'s current placement on the basis of the handwritten agreement and the IEP
revision form.  The ALJ then heard testimony from Sergeant Hall regarding the alleged threats
against M.B.  At the conclusion of that testimony, the ALJ rejected the Board's argument that it
could not assure M.B.'s safety at the school, stating that Seargent Hall had revealed "no specific
threats" and that the conclusion that M.B. would not be safe at Campus High School was based
on "rumor and innuendo."  (Pl.'s Br. Supp. Mot. Summ. J., Ex. 7 63:16-64:8.)  Based on that
finding, the ALJ granted the emergent relief application and ordered the Board to permit M.B. to
attend Campus High School for the 30-day period previously agreed upon by the parties.

On January 2, 2008, Plaintiff filed a motion to amend the due process petition.  The
Board filed a letter in opposition to that motion on January 7, 2008, in which it argued that
Plaintiff's Petition for Due Process should be dismissed.  The Board's argument was based on
the fact that the application for emergent relief sought identical relief to the due process
application.  Since emergent relief was granted, the Board argued that "there is no remaining
dispute as to the evaluation, classification, placement or provision of a free appropriate public
education to M.B.," and "the underlying due process petition ... could have been concluded" in

4

the emergent relief hearing.  (Pl.'s Br. Supp. Mot. Summ. J., Ex. 10 at 1.)  Ken R. Springer, the

ALJ presiding over the due process petition, agreed, and denied Plaintiff's motion to amend.

On March 7, 2008, Plaintiff filed an action in this court seeking an award of attorneys'

fees and costs.  Plaintiff's Complaint alleges that she is entitled to that relief under the IDEA

because she was the prevailing party in the administrative proceeding.  Arguing that Plaintiff was

not a prevailing party, the Board moved to dismiss the Complaint for failure to state a claim on

which relief can be granted.  Plaintiff cross-moved for summary judgment.

## II.  DISCUSSION

As a preliminary matter, it is necessary to address the nature of the motions currently

before the court.  The Board's Motion to Dismiss is premised on the argument that F.B. is not, as

a matter of law, a "prevailing party" under the IDEA, and is therefore not entitled to attorneys'

fees.  In support of that contention, the Board's motion was accompanied by various evidentiary

documents that contain information beyond the scope of the pleadings, including a copy of the

ALJ decision denying F.B. permission to amend the due process petition.  The complaint

requesting fees is not based on that decision, but rather on the decision of ALJ Moskowitz in the

emergent relief hearing.  Therefore, the Board's motion will be treated as a request for summary

judgment.  Fed. R. Civ. P. 12(d); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998

F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document

that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on

the document.) (emphasis added).

**A.  Summary Judgment Standard of Review**

Summary judgment is proper where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law."  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party does not bear the burden of proof at trial, the moving party may discharge its burden by showing that there is an absence of evidence to support the non-moving party's case.  Id. at 325.  If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine fact issue exists and a trial is necessary.  Id. at 324.  In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In deciding whether an issue of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party.  See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  If there are

6

no issues that require a trial, then judgment as a matter of law is appropriate.

In this case, both parties agree that there are no genuine disputes of material fact that would require a trial.  (Pl.'s Br. Supp. Mot. Summ. J. 12); (Def.'s Br. Supp. Mot. Summ. J. 6.) In fact, the only points of contention are whether F.B. was a "prevailing party" under the IDEA and whether the fees requested are reasonable.  Both are questions of law, and are therefore appropriately disposed of on motion for summary judgment.  See Anderson, 242 U.S. at 251-52.

## B.  IDEA Prevailing Party Status

The IDEA permits a court, in its discretion, to award reasonable attorneys' fees "to a prevailing party who is the parent of a child with a disability" in any action or proceeding brought under the Act.  20 U.S.C. § 1415(i)(3)(B).  A party is considered to be the prevailing party if "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).

The Court of Appeals for the Third Circuit utilizes a two-part test to determine whether a plaintiff is a prevailing party: (1) the plaintiff must have achieved relief, and (2) there must be a causal connection between the litigation and the relief obtained.  Wheeler v. Towanda Area Sch. Dist., 950 F.2d 128, 131 (3d Cir. 1991).  The first prong involves a "commonsense comparison between the relief sought and obtained."  Id.  Under this "liberal" standard, a plaintiff may be considered a prevailing party "as long as [he or she] achieves some of the benefit sought in a lawsuit, even though the plaintiff does not ultimately succeed in obtaining a favorable judgment." Id. (citing NAACP v. Wilmington Med. Ctr., Inc., 689 F.2d 1161, 1166 (3d Cir. 1982), cert. denied, 460 U.S. 1052 (1983); see also  P.N. v. Clementon Bd. of Ed., 442 F.3d 848, 853 (3d Cir. 2006) (holding that a plaintiff may be the prevailing party for the purposes of the IDEA even in

7

cases where the defendant chose to settle rather than proceed to final judgment) (citing

Buckhannon Bd. v. West Virginia D.H.H.R., 532 U.S. 598, 603 (2001)).  Causation is

established if the plaintiff demonstrates that the litigation "changed the legal relations of the

parties such that defendants were legally compelled to grant relief" or was a "material

contributing factor in bringing about extrajudicial relief."  Wheeler, 950 F.2d at 132.

### i. Relief Achieved

The Board argues that F.B. is not a prevailing party because the relief granted by ALJ

Moskowitz was not based on a ruling on the merits of the claim.  See J.O. v. Orange Twp. Bd. of

Ed., 287 F.3d 267, 273 (3d Cir. 2002) ("[A] party cannot be a prevailing party if the interim relief

is not merit-based.").  While the Board is correct in its assertion that "[w]ithout a determination

on the merits, neither party can be deemed the prevailing party for the sake of an attorney fee

award," it incorrectly avers that "a decision on the merits of this case was not made."  (Def.'s Br.

Supp. Summ. J. 5.)  ALJ Moskowitz's decision was based on an assessment of the merits; he

rejected the Board's only defense to breach of the IEP agreement, stating that there were "no

specific threats" against M.B. and that the Board's assertion that they would be unable to assure

M.B.'s safety at Campus High was based on "rumor and innuendo."  (Pl.'s Br. Supp. Mot.

Summ. J., Ex. 7 63:16-64:8.)

In support of its contention that ALJ Moskowitz did not make a decision on the merits of

Plaintiff's claim, the Board points out that both ALJs at times referred to the emergent relief

order as a "stay put" provision, and the Order itself stated that it would remain in effect "until the

issuance of a decision on the merits in this matter."  (Def.'s Reply Br. Supp. Mot. Summ. J. 7-8.)

The Board's reliance on those facts elevates form over substance.  First, the interim nature of the

relief granted does not preclude a grant of fees.  See, e.g., Tex. State Teachers Ass'n v. Garland

Indep. Sch. Dist., 489 U.S. 782, 791 (1989) ("A prevailing party must be one who has succeeded

on any significant claim affording it some of the relief sought, either pendent lite or at the

conclusion of the litigation."); Wilmington Med. Ctr., 689 F.2d at 1189 ("[A] prevailing party

can be awarded fees before the conclusion of protracted litigation").  Furthermore, the label given

to the relief is not the controlling factor in determining whether it was granted as the result of an

assessment of the merits.  Hayley v. Pataki, 106 F.3d 478, 483 (2d Cir. 1997) ("[A] decision to

award attorney's fees requires an analysis of whether the party's relief, whether by injunction or

stay, resulted from a determination of the merits."); Bayonne Bd. of Ed. v. R.S., 954 F.Supp. 933,

943-44 (D.N.J. 1997) (awarding attorneys' fees to plaintiffs who received a "stay put" order in an

emergent relief hearing based on the ALJ's assessment of the merits of the parties' arguments

regarding the construction of a settlement agreement).  Whether the emergent relief order is

called a "stay put" or any other name does not alter the fact that it was issued as a result of a

determination on the merits that the Board's only defense was invalid.

The Board's own actions support the conclusion that there was a decision on the merits.

Were it not for the fact that ALJ Moskowitz decided that the Board's only rationale for

contesting M.B.'s placement at Campus High was meritless, the Board would have been free to

re-assert its argument that it could not assure M.B.'s safety in the due process proceeding before

ALJ Springer.  Instead, the Board stated in its January 7, 2008 letter that there was "no remaining

dispute" as to M.B.'s placement and that the due process petition could have been decided at the

emergent relief hearing.  (Pl.'s Br. Supp. Mot. Summ. J., Ex. 10 at 1.)  Those statements

impliedly acknowledge that ALJ Moskowitz rejected the merits of the Board's defense, and make

Defendant's argument before this court that there was no decision on the merits in the administrative proceeding appear disingenuous.  In light of the fact that ALJ Moskowitz decided the merits of M.B.'s claim, the court declines to let the Board have its cake and eat it too.

The facts of this case stand in contrast to those in J.O. v. v. Orange Township Board of Education.  There, a school board brought a petition for emergency relief that sought to place a child who had been repeatedly suspended from school on home instruction until an appropriate educational placement could be found, and compel the child to participate in a series of team evaluations.  J.O., 287 F.3d at 270.  The child's mother consented to the second portion of the petition, thus eliminating the need for an ALJ ruling on whether the child should be compelled to undergo evaluation.  Id. at 271.  The ALJ issued a "stay put" order requiring the school to reinstate the student during the evaluations, but explicitly refused to rule on the propriety of the school's discipline of the child, stating that such a determination went beyond the confines of the emergency relief hearing.  Id. at 272-73.  On that basis, the Court of Appeals found "no indication that [the ALJ] reached the merits of the parties' arguments."  Id. at 274.

In this case, ALJ Moskowitz ruled on the propriety of the Board's actions when he held that the Board's sole defense to their breach of the IEP calling for M.B. to attend Campus High School was meritless.  See (Pl.'s Br. Supp. Mot. Summ. J., Ex. 7 63:16-64:8.)  Based on that finding, he ordered the Board to allow M.B. to attend Campus High School in accordance with the IEP, thus awarding Plaintiff the entirety of the relief sought in both her petitions.  See (Pl.'s Br. Supp. Mot. Summ. J., Ex. 10 at 1) (January 7, 2008 letter from the Board's counsel to ALJ Springer conceding that "the relief sought as already been provided to Petitioner.")  Therefore, F.B. fulfills the first prong of the test for a prevailing party.  See Wheeler, 950 F.2d at 131.

### ii. Causation

In addition to showing that he or she obtained relief, a plaintiff seeking fees must demonstrate a causal connection between the litigation and the relief obtained.  Id.  That connection can be established directly by showing that the litigation "changed the legal relations of the parties such that defendants were legally compelled to grant relief," or indirectly by demonstrating that the suit was a "material contributing factor in bringing about extrajudicial relief."  Id. at 132.

The causal connection between the litigation and the relief obtained in this case is obvious: the Board was legally compelled to place M.B. at Campus High School as a direct result of the emergent relief proceeding.  See (Pl.'s Br. Supp. Mot. Summ. J., Ex. 8.)  The Board has presented no evidence that it would have allowed M.B. to attend Campus High School without being ordered to do so.  To the contrary, prior to litigation the Board clearly stated that it would not abide by the IEP calling for that placement and offered as an alternative 10 hours a week of home instruction pending an agreement under which M.B. would attend an out-of-district school.  (Pl.'s Br. Supp. Mot. Summ. J., Ex. 3.)  In this context, it is clear that the litigation in question was the sole means by which Plaintiff achieved relief.

In sum, F.B. has demonstrated that she achieved the relief sought based on an assessment of the merits of her claim, and that the relief was a direct result of litigation.  Therefore, she is a prevailing party for the purposes of the IDEA.  See Wheeler, 950 F.2d at 131.  As such, she is entitled to reasonable attorneys' fees.  20 U.S.C. § 1415(i)(3)(B).

11

**C. Attorneys' Fees**

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "The product of this calculation is called the lodestar," Apple Corps. v. Int'l Collectors Soc'y, 25 F. Supp. 2d 480, 484 (D.N.J. 1998), and it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley, 461 U.S. at 433. "The lodestar is strongly presumed to yield a reasonable fee." Washington v. Philadelphia County Ct. Com. Pl., 89 F.3d 1031, 1035 (3d Cir. 1996).

The party seeking an award of attorneys' fees bears the burden of establishing the reasonableness of both the hours worked and rates claimed. Hensley, 461 U.S. at 433; Apple Corps., 25 F. Supp. 2d at 484. Once the attorneys' fees applicant has produced satisfactory evidence, the burden shifts to "the party opposing the fee to contest the reasonableness of the hourly rate requested or the reasonableness of the hours expended." Apple Corps., 25 F. Supp. 2d at 485. "If the party opposing the fee petition meets its burden of proving that an adjustment is necessary, the court has wide discretion to adjust the attorneys' fee." Id.

Once the lodestar has been computed, the "court can adjust the lodestar downward if the lodestar is not reasonable in light of the results obtained." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). A court, however, may not "decrease a fee award based on factors not raised at all by the adverse party." Id.

### i. Reasonableness of Hours Expended

The first step in calculating the lodestar is determining whether the number of hours expended was reasonable.  Any "hours that were not reasonably expended" must be excluded from the fee calculation.  Hensley, 461 U.S. at 434.  "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary."  Rode, 892 F.2d at 1183.

The total number of attorney hours may also be reduced when "the documentation of hours is inadequate."  Hensley, 461 U.S. at 433.  The fee petition must be "specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed."  Washington, 89 F.3d at 1037.  It should include "fairly definite information as to the hours devoted to various general activities."  Rode, 892 F.2d at 1190.  It is not necessary, however, "to know the exact number of minutes spent nor the precise activity to which each hour was devoted nor the specific attainments of each attorney."  Id.

Plaintiff requests compensation for 139.2 hours of work performed by Ms. Jennifer Valverde, the Clinic's supervising professor and lead attorney on this case, and 48.7 hours expended by a law student who worked for the Clinic, Ms. Anne Marie Kane.  Of that time, only 24.1 of the hours claimed by Ms. Valverde were spent on the underlying emergent relief proceeding.  The remaining 115.1 hours of Ms. Valverde's claimed time was expended in litigation before this court seeking fees for work performed in the prior action.  Ms. Kane alleges that she worked 20.2 hours in furtherance of the emergent relief petition and 28.5 hours on obtaining a fee reward for work done on that petition.  In order to aid in analyzing the reasonableness of the hours claimed at each stage, a separate lodestar calculation will be completed for the administrative emergent relief proceeding and the litigation before this court.

13

*(1) The Emergent Relief Proceeding*

The Board argues that the hours claimed for work performed in the emergent relief proceeding are unreasonable for two reasons: they include work carried out by Ms. Kane that was unnecessary or duplicative, and the documentation of Ms. Valverde's time was inadequate. (Def.'s Reply Br. Supp. Summ. J. 15-17.)

Plaintiff concedes that the original accounting of fees charged by Ms. Kane included 10.5 hours of work that was duplicated Ms. Valverde.[1]  (Pl.'s Reply Br. Supp. Summ. J. 13-15.)  That overlap demonstrates that either woman would have been capable of completing the work without the aid of the other.  In light of that fact, it would be unreasonable to attribute those hours to Ms. Valverde and award fees at her higher billing rate.  See Evans v. Port Auth. of N.Y. & N.J., 273 F.3d 346, 362 (3d Cir. 2003) (reducing a fee award on the basis that one person could have performed much of the work that was billed by two partners, and suggesting that in cases where it appeared that two people were needed that the hourly rate of one of the partners be reduced to that of an associate) (citing Lanni v. New Jersey, 259 F.3d 146, 151 (3d Cir.2001)).  Therefore, the hours claimed by Ms. Valverde for work on the emergent relief petition will be reduced by 10.5.

In addition to admitting that much of the work performed by Ms. Kane overlapped with that of her supervisor, Plaintiff no longer claims the .1 hours of compensation originally requested for time expended by Ms. Kane in calling the Essex County Court on November 29,

---

[1] The Reply Briefs for both parties wrongly state that the time billed by Ms. Kane for her telephone call to F.B. on November 28, 2007 – a call that the plaintiff concedes was redundant – was .1 hours.  Ms. Kane's affidavit specified a time entry of .2 hours for that event.  (Pl.'s Br. Supp. Summ. J., Ex. 15.)  Therefore, the time expended by Ms. Kane will be reduced by the original figure of .2 hours.

2007.  (Pl.'s Reply Br. Supp. Summ. J. 13.)  Therefore, Ms. Kane's time will be reduced by that

amount.  The remaining hours claimed by Ms. Kane – a total of 9.6 that did not overlap with that

of her supervisor – will be further reduced by 50 percent, yielding a total of 4.8 hours.  That

reduction, which was originally proposed by Plaintiff (Pl.'s Br. Supp. Mot. Summ. J., Ex. 14, ¶

12), reflects the fact that work performed as part of an educational process inevitably involves

extra time expenditure that could be avoided if the work were performed by a practitioner

experienced in the field.  For instance, Ms. Kane no doubt had to familiarize herself with the

procedural requirements of the IDEA, research the process of applying for emergent relief, and

educate herself on the governing law, whereas an experienced attorney would have been able to

utilize background knowledge on those points to minimize the hours expended.

 While a reduction in fees to correct for redundant billing is warranted in this case, the

Board's second argument – that compensation for Ms. Valverde's work should be denied

because her fee petition lacked the specificity necessary for the court to determine whether her

time was reasonably expended – is wholly without merit.  Ms. Valverde's fee petition includes

entries such as:

| Date | Task | Hours |
|------|------|-------|
| 11/28/07 | TC to F.B. | 0.1 |
| 12/10/07 | Legal Research | 3.5 |
| 12/14/07 | Hearing Preparation | 2.0 |

(Pl.'s Br. Supp. Summ. J., Ex. 14.)

Each of the entries provides a date, short description of the task performed, and statement of the

time expended.  The Board's assertion that Ms. Valverde's use of abbreviations such as "TC" for

"telephone call" and "ER" for "emergency relief" renders the descriptions "cryptic" is

unpersuasive, as the summaries provided are more than adequate to allow the court to determine that the hours claimed are not unreasonable.  In fact, the Court of Appeals rejected a similar argument in Rode, 892 F.2d at 1190-91, when it held that a combination of computer-generated and attorney-recorded time sheet submissions – the latter of which included abbreviations – were sufficient to allow the court to determine that the hours claimed were not unreasonable. Therefore, the court declines to reduce the fee award on the grounds that the fee petition was not sufficiently specific.

Having decided that the hours spent on the emergent relief petition by Ms. Valverde should be reduced by 10.5 to reflect work duplicated by her student, the court finds that her time reasonably expended on the emergent relief petition totals 13.6 hours.  As discussed above, Ms. Kane's non-redundant work on the emergent relief petition will be reduced by 50 percent, yielding a figure of 4.8 hours.  When the 10.5 hours of work duplicated by her supervisor (which will be billed and Ms. Kane's lower rate) is added, the time reasonably spent by Ms. Kane on the emergent relief petition is 15.3 hours.  Therefore, the lodestar for the emergent relief proceeding will be calculated as follows: 13.6 hours multiplied by a reasonable hourly rate for Ms. Valverde, plus 15.3 hours multiplied by a reasonable hourly rate for Ms. Kane.

*(2) Litigation Seeking Fees*

Plaintiff alleges that the Clinic expended a much greater amount of time seeking fees through the current litigation than it did in applying for emergent relief.  Ms. Valverde's claimed time for litigation before this court is 115.1 hours, over four times the amount spent on the underlying IDEA petition on which Plaintiff's request for fees is premised.  Ms. Kane asserts that she worked 28.5 hours on tasks relating to the motions currently at issue.  While it is obvious

16

from the size and quality of Plaintiff's pleadings and motions that the Clinic devoted a substantial amount of time to this litigation, an examination of the billing entries for Ms. Valverde and Ms. Kane compels the conclusion that much of their claimed work was redundant or unnecessary, and that the compensation for those tasks should be reduced accordingly.

Of the 28.5 hours Ms. Kane allegedly spent on this litigation, 6.0 hours were spent drafting and editing Plaintiff's Complaint.  (Pl.'s Reply Br. Supp. Summ. J., Ex. B.)  As with the non-redundant work Ms. Kane completed on the emergent relief petition, those hours will be reduced by 50 percent to reflect the inevitable extra time expended by student practitioners as a result of their need to familiarize themselves with legal and procedural background that would be known to an attorney experienced in the field.  The remaining 22.5 hours, which were billed from April 1st through 17th, 2008, were devoted to researching case law and writing Plaintiff's Brief in Support of Summary Judgment.  (Pl.'s Reply Br. Supp. Summ. J., Ex. B.)  Yet in spite of the fact that Ms. Kane had already devoted substantial time to research and writing for that brief, Ms. Valverde claims to have spent 25.9 hours on similar tasks between May 22nd and 28th, 2008. (Pl.'s Reply Br. Supp. Summ. J., Ex. A.)  In fact, Ms. Valverde's time entry for May 23 of that year includes the description "begin drafting Response and Cross-Motion Brief [in Support of Summary Judgment]," even though Ms. Kane's fee petition makes it clear that she had begun the brief over a month earlier.  (Pl.'s Reply Br. Supp. Summ. J., Ex. A.)

In light of this evidence, the court finds that the time Ms. Valverde spent doing legal research for Plaintiff's Brief in Support of Summary Judgment and drafting that document was redundant to the extent that similar work had already been completed by Ms. Kane.  As with the overlapping work performed on the emergent relief petition, it appears that either woman would

17

have been capable of completing those tasks.  Therefore, Ms. Valverde's time spent on the

litigation before this court will be reduced by 22.5 hours to reflect the redundancy and assure that

the Board is not forced to pay a higher rate than necessary for that work.  See Evans, 273 F.3d at

362 (3d Cir. 2003).

In addition to her time spent drafting Plaintiff's Brief in Support of Summary Judgment,

Ms. Valverde alleges that she spent 37.6 hours editing that document.  (Pl.'s Reply Br. Supp.

Summ. J., Ex. A.)  While the court appreciates the Clinic's efforts to ensure that its filings are

free of typos and grammatical errors, a time commitment of 37.6 hours to edit a 36-page

document (over one hour per page) is clearly excessive.  A period of five hours, or roughly eight

minutes per page, should have been more than enough time to edit the rough draft and make any

necessary changes.  The court will adjust Ms. Valverde's hours accordingly.

The hours Ms. Valverde claims she spent editing Plaintiff's Reply Brief pose a similar

problem.  Her time entries for the 19th and 21st of August, 2008 include 9.9 hours of edits to that

document, while the entry for August 20th of that year claims that she spent 4.0 hours on edits to

the Reply Brief and other tasks, but does not specify how those hours were allocated.  (Pl.'s

Reply Br. Supp. Summ. J., Ex. A.)  The court assumes that Ms. Valverde could have edited the

Reply Brief at roughly the same rate as would have been reasonable for the original Brief in

Support of Summary Judgment; an assumption that seems likely to be true given that she wrote

the Reply Brief herself, while the first draft of the other document was written by Ms. Kane.

Therefore, editing the Reply Brief should have taken no more than 2.6 hours, or just over 8

minutes per page.  Ms. Valverde's time entries for August 19th and 21st will be reduced to that

figure, while the entry for August 20th will be reduced by 50 percent in order to eliminate any of

18

the time spent editing while assuring compensation for the other tasks performed that day.

Finally, Ms. Valverde's fee petition includes two entries for June 16, 2008.  The first, totaling 3.5 hours, bears the description "[f]inalize Brief, draft cover letter and E-file documents," while the second alleges that she worked for 2.0 hours to "[e]-file, assemble and Fedex courtesy copies" of the Brief in Support of Summary Judgment.  (Pl.'s Reply Br. Supp. Summ. J., Ex. A.)  To the extent that time reflected in the first entry was spent finalizing the brief, that time represents further excessive editing and is therefore unreasonable.  Once any time spent editing is removed from the first entry, it appears obvious that the two are redundant: both involve compiling and filing electronic and hard copies of the Motion for Summary Judgment. In light of this overlap, the court finds that the hours reflected in the first entry were not reasonably expended and should be eliminated from the lodestar calculation.

Thus, the reasonable time expended by Ms. Kane in litigation before this court stands at 25.5 hours.  That figure includes 22.5 hours of redundant legal research and drafting for the Brief in Support of Summary Judgment (which will be compensated at her lower rate), and 3.0 hours spent writing the Complaint.  The final tally for Ms. Valverde's time spent on this matter is 47.2 hours, a figure which reflects the aforementioned reductions for redundant legal research and writing, excessive editing, and duplicative time entries.

Given the excessive nature of the hours claimed in this case, the court suggests that Clinic to take greater care in accounting for its time in future controversies.  As the Clinic is aware, an award of attorneys' fees under the IDEA is discretionary, 20 U.S.C. § 1415(i)(3)(B), and the plaintiff has the burden of proving that the fees requested are reasonable.  Rode, 892 F.2d 1183.

### ii.  *Reasonableness of Hourly Rate*

Plaintiff proposes as a reasonable hourly rate of compensation $180.00 for Ms. Valverde and $90.00 for Ms. Kane.  A "reasonable hourly rate is calculated according to the prevailing market rates in the community." Washington, 89 F.3d at 1035.  "The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive." Public Interest Research Group v. Windall, 51 F.3d 1179, 1185 (3d Cir. 1995).

The Clinic provided affidavits from two local attorneys who represent students and parents in proceedings similar to this one attesting that the fees requested are within prevailing market rates.  (Pl.'s Br. Supp. Summ. J., Ex. 16, 17.)  Furthermore, the Board has not objected to those rates.  Therefore, the court concludes that the rates requested are reasonable.

### iii.  *Lodestar Calculation*

Having concluded that Ms. Kane reasonably expended 25.5 hours and should be compensated at a rate of $90.00 per hour, her lodestar is the product of those two figures, or $2295.00.  Since Ms. Valverde's reasonable hours were 47.2 and her hourly rate is $180.00, the lodestar for Ms. Valverde is $8,496.00.  Therefore, the total amount of fees due is $10,791.00.

A district court has broad discretion in determining the amount of an award of reasonable attorneys' fees.  In making that determination, the "results obtained" are an "important factor." Hensley, 461 U.S. at 434.  In cases where the attorneys for the prevailing party have "obtained excellent results," they should "recover a fully compensatory fee," which normally encompasses "all hours reasonably expended on the litigation." Id. at 435.  If, however, the prevailing party "has achieved only partial or limited success," the court may reduce the fee award accordingly. Id. at 435-36.

20

The Board contends that the fees awarded in this case should be reduced because, although Plaintiff prevailed on her emergent relief claim, she did not obtain a successful judgment on the merits of her due process petition.  That argument is unpersuasive.  As discussed above, ALJ Moskowitz ruled that the Board's only defense to its breach of the IEP agreement was meritless and ordered that M.B. be placed at Campus High School, thereby settling the only dispute between the parties and providing the full measure of relief sought in both petitions.  The Board itself acknowledged that full relief had been provided in its letter to ALJ Springer.  (Pl.'s Br. Supp. Mot. Summ. J., Ex. 10 at 1.)  Thus, the Clinic "obtained excellent results" and its "fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."  Hensley, 461 U.S. at 435.

**D.  Costs**

Plaintiff also seeks reimbursement for costs in the amount of $499.85.  Those expenses are composed of filing fees, service of process charges, and expenditures associated with compiling and sending papers to the court and the Board.  Since the expenditures were reasonable, Plaintiff will be awarded the full amount of her costs.  See 20 U.S.C. § 1415(i)(3)(B) (allowing for an award of attorneys fees "as part of the costs").

**III.  CONCLUSION**

For the reasons set forth above, F.B. is a "prevailing party" under the IDEA and is entitled to reasonable attorneys' fees and costs.  Therefore, the Board's Motion for Summary Judgment is denied, and F.B.'s Cross-Motion for Summary Judgment is granted.  Attorneys fees of $10,791.00 and costs of $499.85 are hereby awarded to Plaintiff.

The court will enter an order implementing this opinion.

 **s/ Dickinson R. Debevoise**              
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: September 29, 2008

22